UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


LIGHT SOURCES, INC., and
TAN SYSTEMS, INC.,
                    Plaintiffs

        v.

                              Civil Action
                              No. 303 CV 874 (MRK)

                              At New Haven

COSMEDICO LIGHT, INC.,
                    Defendant      August 23, 2004



**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT RELATING TO DEFENDANT,
COSMEDICO LIGHT, INC.'S, COUNTERCLAIMS I, II, III, IV AND V
OF ITS ANSWER AND COUNTERCLAIM TO PLAINTIFFS'
SECOND AMENDED COMPLAINT AND COUNT I OF SAID
SECOND AMENDED COMPLAINT**



                              Arthur T. Fattibene
                              Paul A. Fattibene
                              Fattibene & Fattibene
                              2480 Post Road
                              Southport, CT 06890-1218



ORAL HEARING REQUESTED

**Nature of Proceedings**

Pursuant to the Court's Scheduling Order dated June 2, 2004, any dispository motion will be filed by August 23, 2004. This is Plaintiffs, Light Sources, Inc. (Light Sources) and Tan Systems, Inc. (Tan Systems) Joint Motion For Partial Summary Judgment directed to Defendant's, Cosmedico Light, Inc. (Cosmedico's) Counterclaims I, II, IV and V, asserted in Cosmedico's Answer and Counterclaims to Light Sources and Tan Systems Second Amended Complaint and to Count I of Plaintiffs' Second Amended Complaint.

(a)  Defendant Cosmedico's First Counterclaim asserts that Plaintiffs' use of the letters THR and TLR on sun lamps infringes Defendant's federally registered mark VHR® and Defendant's composite registered word and design mark COSMOLUX VLR® which includes a cat design for sun lamps pursuant to the Trademark Laws of the United States, 15 USC section 1114(1).

(b)  Defendant Cosmedico's Second Counterclaim asserts that Plaintiffs' use of the letters THR and TLR as applied to Plaintiffs' sun tanning lamps constitutes a false designation of origin under the Trademark Laws of the United States, viz. 15 USC sect. 1125(a), and that use of said letters THR and TLR by Plaintiffs on its sun tanning lamps constitutes the unlawful and infringing use of

Defendant's, Cosmedico's, VHR® mark and Cosmedico's composite word and design COSMOLUX VLR® marks.

(c)   Defendant Cosmedico's Fourth Counterclaim asserts that Cosmedico's registered VHR®, Cosmedico's unregistered VLR mark, and Cosmedico's registered composite word and design mark, COSMOLUX VLR® with cat design, are being infringed under the common law by Plaintiffs' use of the THR and TLR letters as applied to Plaintiffs' sun tanning lamps.

(d)   Defendant Cosmedico's Fifth Counterclaim asserts that Plaintiffs' use of the letters THR and TLR on its sun lamps constitutes unfair competition and unfair deceptive acts under Connecticut General Statutes, Chapter 42, section 110(b).

(e)   Summary Judgment is also requested with respect to Count I of Plaintiffs' Second Amended Complaint which is a declaratory judgment count that merely mirrors Defendant's Counterclaims.

**Statement of Facts**

Light Sources and Tan Systems incorporate herein by reference the asserted undisputed facts set forth in Plaintiff's Rule 56(a)(1) Statement.

Plaintiff, Light Sources, Inc., is a prominent and well known manufacturer and seller of specialty type gas

discharge lamps which include, but are not limited to, ultraviolet fluorescent sun tanning lamps, germicidal ultraviolet lamps and various other highly specialized lighting lamps, and having its principal office located in Orange, Connecticut.  (A-1, ¶2)[1]

Light Sources is one of only the seven known manufacturers of low pressure tanning lamps of the type that are the subject of the instant lawsuit.  (A-178)

Tan Systems was organized as a corporation on or about April 1, 1988, under the laws of the State of Georgia with its principal offices located in McDonough, Georgia.  (A-40, ¶2, 3).  Tan Systems functioned as Light Sources' exclusive distributor of the ultraviolet fluorescent lamps bearing the accused THR and TLR markings. (A-290, 291)  Tan Systems was in the business of manufacturing and selling sun tanning beds, sun tanning lamps and sundry other sun tanning products.  On or about February 2004, during the pendency of this lawsuit, Tan Systems sold its business to Heartland Tan, an unrelated third party. (A-47)  Tan Systems is no longer in the sun tanning business or any other business, and has ceased functioning as Light Sources' exclusive distributor of the accused sun lamps.

---

[1] (A-) refers to Plaintiff's Appendix in support of this Memorandum followed by appendix page number.

Tan Systems first commenced selling the accused sun lamps supplied by Light Sources in January 2002 (A-6, ¶21) and ceased the sale of said accused lamps when Tan Systems sold its business to Heartland Tan in February 2004. During this period, Tan Systems marketed the accused lamps supplied by Light Sources under Tan Systems own trademark or brand name TURBO**O**POWER.  (A-6) (A-285-291).  All accused lamps supplied by Light Sources were indelibly etched with Tan Systems trademark TURBO**O**POWER and a thirteen digit model number utilizing a general standardized coding system by which knowledgeable or sophisticated customers or buyers in the industry are apprised of the physical characteristics of the given lamp. (A-290, 291) Ultraviolet sun tanning lamps are made and sold in many sizes and strengths, e.g. in power, amount and type of UV wavelengths emitted by the lamp which is critical for sun tanning purposes.  Because of the potential damage or injury that can occur if improperly used, sun tanning lamps are regulated by the Food and Drug Administration (FDA) and must conform to established FDA standards, and be so certified by the manufacturer or distributor of such lamps. Not all sun tanning lamps are compatible and one lamp cannot be substituted for another unless such lamp has been

4

certified to the FDA as being compatible with another manufacturer's lamp.  (A-112, 113)

Defendant, Cosmedico, was organized in 1992 as a Delaware corporation, with offices currently in Weyland, Massachusetts.  Cosmedico is a relatively small marketing and sales company consisting of only six (6) employees, including its President, Jerry Frank (A-161) and whose market area is limited to only the United States and Canada (A-164B).  Cosmedico does not manufacture any lamps. (A-163) Osram Sylvania supplies Cosmedico the lamps that bear the asserted trademarks in suit, viz. COSMOLUX VHR and COSMOLUX VLR with a cat design. (A-164)  Cosmedico has not produced or identified any lamp which Cosmedico has publicly sold or marketed with only the alleged registered VHR® mark or the asserted VLR alleged common law mark.  (A-164A).  Cosmedico admits it never applied the mark VLR per se to any lamp.  (A-173A).

Cosmedico admits that it never applied the registered VHR® mark to any lamp without associating it with the term Cosmolux or Cosmedico (A-164, 164A).

Cosmedico admits that neither Tan Systems nor Light Sources ever used the Cosmedico COSMOLUX VLR mark which Cosmedico is asserting (A-170).

Cosmedico always applies the marks COSMOLUX VHR or COSMOLUX VLR to the lamps it sells. (A-164A)

Each accused lamp Light Sources supplied to Tan Systems are indelibly etched as indicated below:

Tan Systems' own distinctive trademark TURBO**O**POWER is predominantly shown together with a thirteen digit lamp model number, e.g. FR71T12-THR-160 or FR71T12-TLR-100, indelibly etched on the lamp which also expressly indicates that the lamp is manufactured by Light Sources, Inc.

Further, a user and instruction sheet (A-292) must accompany the sale of such tanning lamps.  Light Sources' user and instruction sheet (A-292) accompanying any Tan Systems sale notifies the purchaser that the lamp has been manufactured by Light Sources and that Tan Systems is the exclusive distributor of the accused lamp.

Jerry Frank, Cosmedico's President, testified on deposition that Cosmedico was not aware of any instance of any actual confusion between the Cosmedico asserted

6

trademarks in this litigation and Light Sources' and/or Tan Systems' use of the letters THR and TLR. (A-165-166).

Jerry Frank stated on deposition that to his knowledge, Cosmedico has never applied just the letters VLR alone to any Cosmedico lamp. (A-173A). Jerry Frank has been president of Cosmedico since 1996. (A-160A, 160B)

Jerry Frank also stated on deposition that Cosmedico has no evidence to date (July 19, 2004) on which Cosmedico can rely to support any claim of damage by Tan Systems' use of the accused THR and TLR markings on the accused lamps Tan Systems marketed. (A-174)

Mr. Frank also testified on deposition that it was Cosmedico's contention that Light Sources has not infringed the trademarks that are being asserted in this litigation. (P-173B)[2]

**The Mark VHR Is A Descriptive Acronym Used Throughout The Sun Tanning Industry To Describe A Particular Category Of Very High Reflector Output Type Lamps**

Reference is made to "The Bible of Indoor Tanning Book", 3rd Ed. (A-97-103) that will establish that HO, VHO and VHR are descriptive acronyms well known and used throughout the tanning industry to define specific categories of lamps having specific properties or

---

[2] After consulting with Cosmedico's counsel during the deposition, Mr. Frank attempted to change his testimony. (A-173C-173F).

characteristics, and used for a specific purpose in a given tanning bed.  Reference is also made to the Declaration of Kristen Tiffany and Christian J. Sauska and the exhibits attached thereto to illustrate that the VHR acronym has been widely used by others throughout the industry to define that category of lamps having a very high reflector output of 160 watts or more.  It is well understood by those in the industry that VHR describes the physical characteristics of a particular type of sun tanning lamp, and that it is not used as an indication of origin as to any particular source.  Reference is also made to Exhibits attached to the Declarations of Christian J. Sauska (A-18-39) and the Exhibits attached to the Declaration of Kristen Tiffany (A-49-69).

The VHR mark was known in the sun tanning industry long before Cosmedico sought to register the mark VHR.  Dr. Muller of QDM Company, in an ad circulated throughout the United States prior to August 3, 1994, clearly referred to the use of HO, VHO and VHR types of lamps in Dr. Muller's then newly developed tanning bed which Dr. Muller called a Very High Performance Bed (VHP).  Declaration of Kristen Tiffany, Exhibit B (A-49-51).

**The Prosecution History of the VHR Registered Trademark In Suit**

Cosmedico initially filed its application to register the VHR mark on May 19, 1995, that was assigned SN 74-677,697, alleging a date of first use in commerce of December 1994 and in interstate commerce use as early as December 1994.  The goods to which the mark VHR was applied was described as "ultra-violet fluorescent lighting tubes." (A-182-184).  The description of the goods was later amended by the Examiner to read -- ultra violet fluorescent lighting tubes for sunning and tanning purposes --.  The specimen to evidence use of the VHR mark submitted with the application appears to be a Cosmedico brochure depicting a sun tanning lamp having imprinted thereon the mark COSMOLUX®VHR, all in similar capital block letters.  (A-186)

In an Office Action dated November 25, 1995, the Examining Attorney inquired of the Applicant (Cosmedico) "whether the wording 'VHR' has any signification in the relevant art or industry or as applied to the goods.  37 CFR Section 2.61(b)".  (A-190, 191)

In response to this inquiry, Cosmedico, on May 8, 1996, advised the Examining Attorney that:

> "The expression "VHR" was developed by the
> applicant herein, and is an acronym for
> the words "very high reflector-output."
> To the best of Applicant's knowledge, the

expression "VHR" has no relevance in the
trade or industry, but is a derived
expression made up by applicant here."[3]
(A-192)

The Examining Attorney, in apparent reliance on
Cosmedico's statement as to the origin of the term VHR,
passed the application to publication and the mark was
published for opposition on October 8, 1996.

During the opposition period, Light Sources did
initially oppose the VHR mark, but the opposition was
dismissed by mutual consent of the parties before any
decision was rendered by the Patent and Trademark Office.

The VHR mark was finally allowed to be registered on
December 30, 1997 under Registration No. 2,124,659. (A-199)

The registered VHR is not rendered incontestable as
Cosmedico has not complied with the incontestability
requirements of Title 15 USC section 1065.

**The Prosecution History of the COSMOLUX VLR Mark**

Cosmedico filed an initial Intent to Use trademark
application for the composite word mark CosmoLux VLR on or
about July 30, 1997, which was assigned SN 75-334,449. (A-

---

[3] It appears that Cosmedico's statement to the Examining Attorney on May 8, 1996, was grossly inaccurate and deceptively false when it is noted that the use of the term VHR was widely known and used by others throughout the industry. Reference is made to Dr. Muller's use of the term VHR (A-49-51) before Cosmedico filed its application; Tan Systems' use of the term in 1995 (A-106) and various articles and ads published in the widely read trade magazines "Today's Image", December 1995 issue (A-110); January 1996 issue (A-114, 115) and Looking Fit trade journal, March 1996 issue (A-117-119), in which the mark VHR was widely used to describe that category of lamps having a very high reflector output of 160 watts or more. Reference is also made to The Bible Of Indoor Tanning (A-97-103).

205-209)  The Examining Attorney initially refused registration under Trademark Act Section 2(d), 15 USC section 1052(d).  (A-210-218)  Apparently, Cosmedico overcame the Examining Attorney's objection and the Examining Attorney eventually passed the application to publication (A-229) and the application was published for opposition on March 23, 1999.

On June 15, 1999, the Patent and Trademark Office issued a Notice of Allowance (A-230), and advising the Applicant of the requirement to file a Statement of Use within six (6) months to avoid abandonment of the application.  (A-230)

On or about November 11, 1999, Cosmedico filed its statement of use, alleging a date of first use as of July 30, 1997 (A-232-233) and submitted three specimens of the mark as allegedly actually used. (A-235)[4]

On February 16, 2000 (A-236, 237), the Patent and Trademark Office advised Cosmedico that the specimen (A-235) received did not agree with the trademark application drawing (A-208); and that Cosmedico had to (1) submit either a new drawing that agreed with the specimen

---

[4] The specimen (A-235) submitted indicated that the mark VLR was registered by the use of the symbol ® when, in fact, VLR was not yet registered.

submitted (A-235) or (2) submit a specimen that agrees with the mark shown in the application drawing (A-208).

On or about May 16, 2000, Cosmedico submitted a new trademark drawing CosmoLux VLR (A-241, 242). The Patent and Trademark Office, on February 2, 2001, again rejected the application for the reason that the specimen of alleged use did not conform to the new drawing. (A-245, 246) The Patent and Trademark Office rendered the action FINAL.

Because Cosmedico did not or could not file a proper Use Statement, the application was abandoned. As a result, it appears that Cosmedico **never** perfected or used as a trademark the specific mark CosmoLux VLR of its Intent to Use Trademark Application SN 75-334,449. (A-206, 207)

The CosmoLux VLR mark of said abandoned application (A-206, 207) is not the mark that is being asserted by Cosmedico in any of its counterclaims.

**The Prosecution History Of Cosmedico's Composite Word and Design Mark COSMOLUX VLR with Cat Design**

On or about May 31, 2002, Cosmedico filed a Use Trademark Application which was assigned SN 76-415,356 for the mark COSMOLUX VLR with a cat design and alleging a first use of July 30, 1997 (A-254, 255). The specimen (A-

258) submitted with the application to evidence the alleged first use was attached.[5]

The Examining Attorney issued an "Office Action" (A-260-266) on September 16, 2002, refusing registration because the mark resembled a prior U.S. Registration No. 2,476,193, allegedly owned by a related corporation. The Examining Attorney also inquired as to whether the term VLR had any meaning or significance in relation to the goods other than a trademark significance. The Examining Attorney also advised that if the term VLR has a meaning or relationship to the goods, the Examining Attorney may require a disclaimer of the descriptive term (VLR) apart from the mark as shown.

On May 6, 2003, the Patent and Trademark Office issued a Notice of Abandonment of Application SN 76-415,356 for failure to respond. (A-269) On or about May 7, 2003, Cosmedico filed a Petition to Reinstate the Trademark Application SN 76-415,356, together with a response to the Examining Attorney's Office Action of September 16, 2002 (A-274-279).

On or about August 20, 2003, the Examining Attorney issued a notice of publication advising that the

---

[5] The submitted specimen (A-258) indicate the mark COSMOLUX VLR was registered as indicated by the ® symbol when in fact the mark was not registered yet.

application would be published for Opposition on September 9, 2003 (A-282).

The mark COSMOLUX VLR with cat design was registered on December 2, 2003, with Registration No. 2,788,198, (A-284) and is one of the marks being asserted in this suit. **The Alleged Common Law VLR Mark.**

Discovery to date indicates that Cosmedico only used the term VLR in conjunction with the term COSMOLUX with and without the cat design as indicated in its recently secured Registration No. 2,788,198. (A-284)  Documents produced to date do not indicate that Cosmedico ever publicly used the term VLR at common law separate and apart from the term COSMOLUX and/or the cat design to indicate origin of source.  Absent any trademark use, Cosmedico has not acquired any trademark rights into the mark VLR, per se.

It is undisputed that the mark VLR is registered to Envirex, Inc., an unrelated third party, as U.S. Registration No. 2,133,076 on January 27, 1998, (A-301) for goods classified in international class 011, the same class in which Cosmedico's trademark for ultraviolet sun tanning lamps are classified, on an application initially filed on October 19, 1995, SN 75-007,939.

Neither Tan Systems nor Light Sources has used the term VLR as a trademark to indicate origin of source.

Light Sources uses the letters TLR only as a part of a lamp model number, e.g. FR71T12-TLR100 in conjunction with Tan Systems' trademark TURBO**0**POWER and which lamps are clearly marked as being manufactured by Light Sources.  (A-290)

Tan Systems uses the mark TLR in conjunction with its TURBO**0**POWER or TURBO brand name as shown in attached Appendix Exhibit (A-285-289) and (A-290).


**SUMMARY JUDGMENT STANDARD**

The standard for summary judgment has been well established by the Courts.  Basically, summary judgment is appropriate when there is no genuine issue of material fact and when viewing the evidence in a light most favorable to the non-moving party, no reasonable trier of fact could disagree as to the outcome of the case.  Nabisco, Inc. v. Warner-Lambert Co., 220 F.2d 43, 45; 55 USPQ 2d 1051 (2 Cir 2000); Nora Beverages, Inc. v. Perrier Group of America, Inc.,                 ; 60 USPQ  2d 1038 (2 Cir 2001).

Rule 56, Fed.R.Civ.P., provides that summary judgment is appropriate if the pleadings and evidence of record "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."

15

To create a genuine issue of material fact, the non-moving party must do more than present some evidence on a disputed issue.  In Anderson v. Liberty Lobby, Inc., 477 US 242, 249-50 (1986), the U.S. Supreme Court stated:

> "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted."

The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, the burden on the moving party may be discharged by showing or pointing out to the Court that there is an absence of evidence to support the non moving party's case.  Celotex Corp. v. Cartrett, 477 US 317 (1986).

The nonmovant must do more than raise some doubt as to the existence of a fact, the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury.  However, the evidence must be more than the nonmovant's pleadings and affidavits.  Letica Corp. v. Sweetheart Cup Co.,                ; 25 USPQ 2d 1727, 1729 (ED Mich 1992).

The Second Circuit has repeatedly held that summary judgment may be appropriate in certain trademark actions. Lang v. Retirement Living Publishing Co., Inc., 949 F.2d

576; 21 USPQ 2d 1041 (2 Cir 1991); <u>B&L Sales Associates v.</u>
<u>H. Daroff</u>, 421 F.2d 352; 165 USPQ 353 (2 Cir 1970), cert
denied 398 US 952; <u>Kiki Undies Corp. v. Alexander's</u>
<u>Department Stores, Inc.</u>, 390 F.2d 604; 156 USPQ 600 (2 Cir
1968).

**THE RELEVANT TRADEMARK LAW**

Under Section 1114 of the Lanham Act, a trademark
owner in a trademark infringement action must show that the
accused infringer (1) without consent, (2) used in
commerce, (3) a reproduction, copy or colorable imitation
of the trademark owner's registered mark as part of the
sale or distribution of goods or services and (4) that such
a use is likely to cause confusion.  15 USC 1114(1)(a).
Thus, what the trademark owner needs to demonstrate is that
it has a valid mark entitled to protection and that the
accused infringer's use of it is likely to cause confusion.
<u>Gruner & Jahr USA Publishing v. Meredith Corp.</u>,            ;
26 USPQ 2d 1583, 1585 (2 Cir 1993).

As noted in <u>Gruner</u>, supra, the analysis begins with
the first step of determining whether the asserted mark
merits protection before proceeding with the second step,
viz. the likelihood of confusion.   It has been determined
that the strength of a trademark in the marketplace and the

degree of protection it is entitled to are categorized by the degree of the mark's distinctiveness in ascending order going from generic, descriptive, suggestive to fanciful or arbitrary, citing Abercrombie & Finch Co. v. Hunting World, Inc., 537 F.2d 4, 9; 189 USPQ 759, 769 (2 Cir 1976).

A generic term is a common name or word that describes a kind of product like automobile, aspirin, lamp, which are available to anyone and which are never entitled to trademark protection. Gruner, supra.

In Bell Smith Corp. v. Data National, 35 USPQ 2d 1554, 1559 (Fed Cir 1995) the Court noted that where there is near universal use [or understanding] of a logo [or acronym] in a given field for the identical goods, is strong evidence purchasers would not be able to differentiate between competing sources by viewing the logo or [acronym] in the instant case. The cases recognize that competitors' use of a logo is evidence of genericism.

At the opposite end of the distinctiveness array are the arbitrary or fanciful terms that may always claim trademark protection and is never the common name for a product. Such marks bear little or no relationship to the product represented thereby. An arbitrary term may have a dictionary meaning but not describing the product like Ivory for soap or Black Flag for insect repellent. A

fanciful mark may be a coined or made up term, e.g. EXXON for gasoline, Kodak for camera or Xerox for copiers.

The other two categories defining trademark strength are the suggestive or descriptive terms.  The difference between the two is that a descriptive mark may be protected only if it has acquired secondary meaning, while a suggestive mark is protected without a showing of secondary meaning.  A suggestive mark suggests the product that may take some imagination to grasp the nature of the product.

More specifically, a descriptive mark is one that tells something about a product, its qualities, ingredients or physical characteristics.  It may also point to the products' intended purpose, function, intended use, size or merit.

Having determined the scope of protectability of a trademark, the second step is to determine the likelihood of confusion or, in other words, that numerous ordinary prudent purchasers of the goods in question are likely to be confused or misled as to the source of the product in question because of the entrance in the marketplace of the accused infringer's mark.  Gruner, supra.

The factors normally considered in determining likelihood of confusion within the Second Circuit are the familiar Polaroid factors which include (1) strength of the

assert marks, (2) the similarity of the marks, (3) the

competitive proximity, (4) the likelihood of bridging the

gap, i.e. a trademark owner offering of a product similar

to that of the accuser infringer's product, (5) actual

confusion between the products, (6) good faith of the

accused infringer, (7) quality of the accused product and

(8) sophistication of the relevant purchasers.  Polaroid

Corp. v. Polarad Elect. Corp., 287 F.2d 492; 128 USPQ 411

(2 Cir 1961).

When conducting a Polaroid analysis, a court should

focus on the ultimate question of whether the relevant

consumers are likely to be confused.  In making this

determination, the Court must look to the totality of the

product.  Although no one factor is necessarily

dispositive, any one factor may prove to be dispositive.

Nora Beverages, Inc. v. Perrier Group of America, Inc.,

      ; 60 USPQ 2d 1038, 1041 (2 Cir 2001).

Summary judgment dismissing a trademark infringement

action can be granted where it is obvious from the exhibits

and evidence presented that no relevant consumer or buyer

of the accused infringing goods could possibly mistake

their source by believing that they were made by the

trademark owner.  Locitite Corp. v. Broadview Chemical

Corp.,              ; 165 USPQ 353 (2 Cir 1970); Warner

<u>Bros., Inc. v. American Broadcasting Co., Inc.</u>, 720 F.2d 231; 222 USPQ 101, 113 (2 Cir 1983).

In determining likelihood of confusion or infringement of a trademark, consideration must also be given in determining whether the infringer is using the accused mark as a trademark or in a descriptive manner or as an adjective.  15 USC Section 1115(b)(4).  <u>Kiki Undies Corp. v. Alexander Department Stores</u>, 156 USPQ 600 (2 Cir 1968).

## A R G U M E N T

### I.  Summary Judgment With Respect To Cosmedico's First Counterclaim Is Appropriate

Cosmedico, in its First Counterclaim, is asserting that Plaintiffs, Light Sources and Tan Systems, are infringing two (2) Cosmedico federally registered trademarks, viz. the VHR® mark (A-199) and the composite word and design mark COSMOLUX VLR® trademark.[6] (A-284)

Neither Light Sources and/or Tan Systems are using the registered VHR mark or the COSMOLUX VLR registered mark. In fact, Mr. Frank, Cosmedico's president, testified on deposition under oath that neither Light Sources nor Tan Systems has used the COSMOLUX VLR mark on any lamp made and/or sold by Light Sources or Tan Systems.  (A-170)

---

[6] The COSMOLUX VLR with cat design mark was registered on December 2, 2003, during the pendency of this lawsuit, which issued on application SN 76-415,365 filed June 3, 2002, alleging a date of first use in commerce of July 30, 1997.  (A-254, 255)

Cosmedico has stipulated in the Joint Report of the Parties Planning Meeting, filed with the Court about August 20, 2003, that "Plaintiff Light Sources, Inc. never applied the asserted common law COSMOLUX VLR mark to any product."

Mr. Frank also testified on deposition under oath that Cosmedico never applied the registered mark VHR per se to any Cosmedico lamp without associating the VHR mark with the words "COSMEDICO" or "COSMOLUX". (A-168A, 168B)[7] The record before the Court is that the asserted registered VHR mark was always publicly displayed closely associated with the mark COSMOLUX as a composite mark. (A-10-17).

Notwithstanding the above undisputed facts, the mark VHR is highly descriptive, if not generic, as describing a specific category of ultraviolet sun tanning lamps that the professionals in the industry and the purchasers of such lamps understood to be a very high reflector output lamp of 160 watts or more. The term VHR is a well known acronym that was used throughout the sun tanning industry before Cosmedico filed its trademark application SN 74-677,694 (A-179-199) on May 19, 1995, to register the popularly used VHR acronym. Reference is made to the Declaration of Kristen Tiffany, paragraphs 9-12 (A-41-43) and Exhibits at

---

[7] Although requested several times, Cosmedico has not produced any evidence or lamp that Cosmedico ever applied the mark VHR per se as registered to a lamp without associating the VHR mark with the dominant words COSMEDICO or COSMOLUX.

(A-49-51).  The attached appendix exhibits at (A-55-69),

(A-106-110), and (A-114-119) also show the notorious use of

the VHR descriptive acronym throughout the industry for a

very high reflector output lamp.  Particular reference is

also made to appendix exhibit "The Bible of Indoor Tanning"

at (A-97-103), specifically describing the category or

physical characteristics of the HO, VHO and VHR type lamps

and how each is expected to be used.  Other evidence of the

common use of the descriptive VHR mark is noted in Appendix

Exhibits at (A-122-130) and A-132-143).

Cosmedico is alleging that Light Sources' use of the

THR letters and TLR letters as part of Light Sources'

designated model number for identifying the lamps (A-290,

A-291) it sells exclusively to Tan Systems infringes

Cosmedico's asserted federal trademarks (A-199) and (A-

284).

Light Sources only use of the accused letters THR and

TLR is the inclusion of said letters as part of a thirteen

digit model number, e.g. FR71T12-THR-160 and FR71-512-TLR-

100 assigned to identify Tan Systems' TURBO**0**POWER lamps,

which is imprinted on the lamp.  (A-290, 291).  The

foregoing model numbers are indelibly etched on each lamp,

exclusively sold to Tan Systems.  Further, Light Sources'

model numbers are closely associated with Tan Systems own

trademark TURBO**O**POWER.  In addition, Light Sources name is prominently displayed on each lamp as the manufacturer of the lamp.  (A-290, 291)  Tan Systems, in turn, also used the letters THR and TLR closed associated with its own distinctive or house trademark TURBO**O**POWER or TURBO.  (A-285-289).

## II.  The Infringement Analysis

(a)  As the Second Circuit Court noted in Gruner, supra, the first step of the infringement analysis is to determine the scope of protection to which an asserted trademark is entitled.  In view of the record and the notorious use and meaning the mark VHR has acquired in the industry, it is at best highly descriptive of the associated goods, if not generic.  Clearly, for the reasons and rationale stated in Bell South Corp. v. Data National, supra, the wholesale use of the term VHR by others in the sun tanning industry to identify or describe a particular category of lamp, viz. a very high reflector output lamp of 160 or more watts, is strong evidence that the purchasers would not be able to differentiate between competing sources merely by comparing the marks VHR and THR or VLR and TLR.  This is further evident by the fact that Cosmedico always closely associated the asserted marks VHR and VLR with Cosmedico's well known house brand or

trademark COSMOLUX by COSMEDICO. (A-10-17). Likewise, Light Sources clearly labeled each lamp bearing the accused THR or TLR lettering as manufactured by Light Sources. (A-290-291). Tan Systems at all times associates its use of THR and TLR letters in close association with Tan Systems' recognized TURBO**O**POWER or TURBO trademarks. (A-285-289).

Cosmedico's only purpose for using the mark VHR and VLR with the house mark COSMOLUX is to differentiate the physical characteristics of one COSMOLUX lamp from the other so that the purchasers would be able to distinguish a very high reflector output lamp from a lower reflector output lamp, which is critical in the sun tanning lamp. Because of the dangerous UV light wave generated by such lamps, they cannot be interchanged or substituted one for the other. See FDA compatibility requirement (A-112, 113).

The use of the VHR and VLR marks in the sun tanning industry is analogous to "diet" or "non-diet" in the soda industry. In the sun tanning industry, "VHR" and "VLR" cannot indicate origin of source any more than "diet" or "non-diet" can indicate origin of source in the soda industry. The same criticism applies to Light Sources' use of the THR and TLR marks. It is for this reason that Cosmedico and Light Sources and/or Tan Systems associate their respective three letter marks with their respective

25

dominant or readily distinguishable and well known house trademarks "COSMOLUX" and "TURBO**O**POWER" respectively, in addition to the name of the source producer clearly indicated on each lamp.

In view of the undisputed facts of record and the applicable authorities, the highly descriptive or generic nature of the asserted Cosmedico registered VHR mark and the alleged common law VLR mark indicate that Cosmedico's asserted VHR and VLR marks are very weak marks at best that can only be entitled to little, if any, protection.

(b)  Having determined the scope of protection Cosmedico is entitled to, consideration must also be given to the likelihood of confusion analysis.

In the Second Circuit, the factors that are ordinarily weighed in determining likelihood of confusion, or conversely the lack of any likelihood of confusion, are the Polaroid factors enunciated in Polaroid v. Polarad, supra. Whether or not a trademark owner receives judicial protection depends on whether there is any likelihood that an appreciable number of prudent purchasers are likely to be confused or misled as to the source of the goods in question.  Lang v. Retirement Living Publishing Co., Inc.,

; 21 USPQ 2d 1041, 1043 (2 Cir 1991).

### 1.   Strength of Cosmedico VHR Mark

This inquiry focuses on the distinctiveness of the VHR mark or more precisely, its tendency to identify the goods as coming from a particular source.  As indicated herein, the extensive third party usages of the "VHR" mark to describe a particular category or type of lamp, viz. a very high reflector output lamp of 160 watts or more, weighs against finding VHR a strong mark.  That the mark VHR is weak is further evident in that Cosmedico has not ever used the VHR mark separate and apart from its recognized trademark COSMOLUX.  Mr. Frank, Cosmedico's president, so testified on deposition at (A-164A).  Mr. Frank further testified on deposition that there exists in the sun tanning lamp industry a host of third party users of similar descriptive marks or acronyms such as HO, VHO, VHOR, VHO/R, SHR, VHRX, VHRS (A-166, 166A, 170A, 170B, 171, 178A, 178B, 173C, 178D and 178E).

On December 2, 1996, prior to the registration of Cosmedico's VHR mark on December 30, 1997, Mr. Frank acknowledged in a letter (A-120, 121) that Cosmedico was aware of at least four competitors who were advertising "VHR" equipment.  Reference is also made to Dr. Muller's ad (A-49-51), Hapro ads (A-60-62), the various competitors ads

at (A-64-69), Tan Systems' ad ©1995 at (A-106-109).  See also (A-110).

In view of the undisputable evidence of record, the established descriptive or generic nature of the VHR mark is a factor that must be weighed heavily in favor of Light Sources and Tan Systems.  No reasonable juror would find otherwise.

Insofar as the COSMOLUX VLR registered mark is concerned, the infringement issue and the strength and/or weakness of the mark are rendered moot issues in that Cosmedico has stipulated in the Joint Report of the Parties Planning Meeting filed with the Court on August 20, 2003, that Plaintiff Light Sources, Inc. has never applied the composite mark COSMOLUX VLR to any product.  Mr. Frank also testified on deposition that neither Light Sources nor Tan Systems use the composite COSMOLUX VLR mark.  (P-170)

**2.  The Similarities of the Mark.**

The registered VHR mark per se consists of only three "block type" non descriptive letters as indicated below.

In actual practice, Cosmedico has always associated the mark VHR in combination with the dominant COSMOLUX mark as indicated below:

28

The overall impression of the VHR mark in <u>actual use</u> to the ordinary, consuming public is a mark consisting of the combination COSMOLUX VHR.  Cosmedico has never applied the letters VHR per se to any lamp to indicate origin of source (A-168B, 169).

Light Sources and Tan Systems do not use the letters VHR or VLR.  Light Sources and Tan Systems' accused letters THR and TLR are totally different in appearance, sound and connotation.  The letter T cannot be confused for the letter V.

The connotation and meaning of the VHR and VLR marks to those purchasers of sun lamps know that the VHR mark describes a very high reflector output lamp of at least 160 watts.  (See A-97-103).  Light Sources' THR and TLR refer to Tan Systems TURBO**O**POWER high reflector output lamp of 160 watts or more and Tan Systems TURBO**O**POWER lower reflector output lamp of 100 watts or less (A-285-289) respectively.

Light Sources at all times used the accused THR and TLR letters as part of a thirteen digit model number in accordance with the sun tanning industry's recognized

29

standard practice as noted at (A-104-105).  Light Sources'
use of the accused mark is shown below.




     Light Sources' use of the mark THR or TLR are
obviously dissimilar in appearance, sound and/or
connotation from that of Cosmedico's use of the VHR and VLR
marks.  Further, Light Sources' name is prominently
indicated on each lamp <u>to indicate origin of source</u>.
     Cosmedico's federal registration for the mark COSMOLUX
VLR with a cat design (A-284) comprises a composite word
and design mark which must be considered in its entirety.
     Composite marks are to be compared by looking at them
as a whole, rather than breaking the marks up into their
component parts for comparison.  This is frequently
referred to as the "anti-dissection" rule.  The rationale
for the rule is that <u>the commercial impression of the</u>
<u>composite trademark on the ordinary prospective buyer is</u>
<u>created by the mark as a whole, and not by its component</u>
<u>parts</u>.  A mark should not be dissected or split up into its
component parts and each part then compared with
corresponding parts of the accused conflicting mark to

determine the likelihood of confusion.  It is the impression that the mark as a whole creates on the average, reasonably prudent buyer and not the parts thereof that is important.  McCarthy on Trademarks and Unfair Competition, 4th Ed., Vol 3, sec. 23:41, citing Estate of P.D. Beckwith, Inc. v. Comm. Of Patents, 252 US 538 (1920); Dreyfus Fund, Inc. v. Royal Bank of Canada, 525 F. Supp. 1108; 213 USPQ 872 (SDNY 1981).

Cosmedico, under the anti-dissecting rule, cannot assert that merely because VLR has been registered in combination with another term and a design, it precludes Light Sources from using a different three letter mark like THR as part of a thirteen digit model number that is in accordance with the industry standard (A-104-105).

This factor is also heavily weighed in favor of Tan Systems and Light Sources, as no reasonable jury could determine otherwise.

**3.  Proximity of Products.**

At first blush it would appear that the products are similar.  Admittedly, Cosmedico's lamps and Light Sources' lamps are sun tanning lamps which are sold to like customers through the same channel of trade.  However, due to the specific nature of the product, sun tanning lamps are considered dangerous and are regulated by the FDA.  The

FDA has set specific standards for establishing compatibility between the sun lamp manufactured by different producers.  Unless a sunlamp is certified to be compatible with another producer's lamp, they cannot be considered similar, i.e. compatible.  See (A-112-113) on compatibility.

Cosmedico, in their Compatibility Chart and User's Instruction (A-293-295), equate their COSMOLUX VHR lamps to Light Sources' Signature Series VHO/R 160 and 140 watt lamps (which are not asserted as infringing the Cosmedico marks in suit).  Also, Cosmedico does not equate its VHR or COSMOLUX VHR lamps to any Tan Systems' TURBO**0**POWER TLR or THR lamps.  From a technical or compatibility standpoint, Cosmedico is not certifying to the FDA that its COSMOLUX VHR brand lamps are similar or compatible to the accused Light Sources and Tan Systems TURBO0POWER THR or TLR lamps.

For the above technical reasons, this factor is weighed more favorably in favor of Light Sources or at best be considered a wash.

**4.  Bridging the Gap.**

This factor is considered to be a non factor which would not favor either party, since Cosmedico admits that its COSMOLUX VHR lamp is compatible to a non-accused Light Sources' Signature Series VHO/R lamp (A-293) and which

Cosmedico admits do not infringe (A-178, 180, 181). Thus, COSMOLUX VHR lamps are already in competition with Light Sources' non-infringing Signature Series VHO/R brand (A-178, 180, 181). The situation would not differ if in the future Cosmedico certifies that its COSMOLUX VHR lamps are rendered compatible to Light Sources and Tan Systems accused TURBO**0**POWER THR styled lamps, which are no long being sold since Tan Systems sold its business in February 2004.

**5. Actual Confusion.**

This factor clearly favors Light Sources and Tan Systems, since all parties admit that there have been no instances of actual confusion. Mr. Frank testified on deposition that Cosmedico is not aware of any incident of any actual confusion between Cosmedico's asserted trademarks in suit and Light Sources or Tan Systems use of the THR and TLR markings. (A-165-166).

Christian J. Sauska has also declared that neither Light Sources and/or Tan Systems have ever encountered even a single instance of any actual confusion. (A-6, para. 23).

The absence of any instance of any actual confusion also weighs heavily in favor of Light Sources and Tan Systems. No reasonable juror could determine otherwise.

33

**6.  Good Faith.**

Cosmedico cannot make any showing of bad faith.  The marks THR and TLR were clearly adopted and included in Light Sources' model number coding to identify the customer or the customer's brand.  The "T" was selected to identify the customer and its trademark, viz. Tan Systems and the TURBO**O**POWER brand.  The HR was selected to designate a high reflector power output (160 watts) lamp and the LR was selected to identify a lower reflector output lamp (100 watts).  The other digits in Light Sources' model number coding conformed to the accepted standard employed in the industry.  (A-104)

It is obvious that Light Sources is not using the model numbers FR71T12-THR 160 or FR71T12-TLR-100 as a trademark nor would any prudent buyer consider such model number designation to be a trademark.  Light Sources' model numbers are coded according to industry standards to describe the characteristics of its goods and cannot constitute any infringement.  Kiki Undies Corp. v. Alexander's Dept. Stores, supra and 15 USC section 1115(b)(4).  Lack of any bad faith is further evident in that each lamp bearing the accused THR and TLR lettering were clearly marked that the lamps were manufactured by Light Sources; and the labels applied to the lamps clearly

indicated that <u>Tan Systems was the exclusive distributor</u>. (A-290, 291).

This factor is also weighed heavily in favor of Light Sources' and Tan Systems', and no reasonable jury would consider otherwise.

**7.  Quality of the Product.**

This factor is a wash and not likely to favor either party as the record and experience indicate that there is no substantial difference between the respective qualities of goods.

**8.  Sophistication of the Buyers.**

Because of the obvious danger and potential of substantial injury that can be caused by use of the wrong type of sun lamp in a tanning bed, the industry is subject to FDA regulations.  Also, sun tanning lamps are required to meet rigid FDA standards.  The buyers of sun tanning lamps are not the ordinary housewife or lay person.  The buyers of sun tanning lamps are those professionals who are manufacturing the sun tanning beds and/or the distributors who in turn market the lamps to the operators of the sun tanning salons.  In other words, the buyers of sun tanning equipment or replacement lamps are sophisticated professionals.  (A-7, ¶25) (See A-112, 113).  This factor is also weighed heavily in Light Sources' and Tan Systems'

favor, and it is submitted that no reasonable juror could consider otherwise.

Proper consideration of the foregoing Polaroid factors will establish that there can be no likelihood of confusion on the part of an appreciable segment of the relevant purchasing public as to the source of the goods.  The parties have virtually admitted the same, as the parties have testified there has been no incident of any actual confusion.

**III.  The Fair Use Defense**

It must be considered that Light Sources' use of the accused THR and TLR letters as a part of a thirteen digit model number to identify its lamps and coded to advise the purchaser of the specific characteristics of the lamp, e.g. length, diameter, power output of one lamp from the other constitute a non-infringing fair use of the accused terms THR and TLR under 15 USC 1115(b).  Cosmetically Seal Industries v. Cheeseborough-Pond's USA, 43 USPQ 2d 1956 (2 Cir 1997).  Clearly, Light Sources is not using the THR and TLR as trademarks.  The accused marks are merely being used as part of a model number coded to identify the OEM customer and the physical characteristics of the lamps.

Plaintiffs are entitled to Summary Judgment as to Defendant's First Counterclaim.

**IV.  Summary Judgment Should Be Granted As To Cosmedico's Second Counterclaim.**

Cosmedico's Second Counterclaim asserts that Light Sources' and Tan Systems' use of the accused THR and TLR letters as applied to Light Sources' lamps constitute a false designation of origin under the Trademark Law, viz. 15 USC 1125(a).  This claim should be summarily dismissed, since this claim requires a showing of a likelihood of confusion.  Private Eye Sunglass Corp. v. Private Eye Vision Center of New Milford,              ; 25 USPQ 2d 1970 (D.Conn. 1992).  As there can be no likelihood of confusion for the reasons stated herein, Summary Judgment as to Cosmedico's Second Counterclaim should be granted.

**V.  Summary Judgment Should Be Granted As To Cosmedico's Fourth Counterclaim.**

The fourth counterclaim alleges a trademark infringement cause of action under the common law.  The question to be determined as to what constitutes unfair competition under the common law is whether or not the accused marks TLR and THR are such as to cause confusion with Cosmedico's asserted marks.  As there can be no likelihood of confusion for the reasons hereinbefore stated, an essential element of Cosmedico's fourth counterclaim of common law trademark infringement is lacking.  Private Eye Sunglass Corp., supra.  Therefore,

the grant of summary judgment is proper as to the Fourth
Counterclaim.

**VI.   Summary Judgment Should Be Granted As To Cosmedico's
Fifth Counterclaim**

Cosmedico's fifth counterclaim is alleging an unfair
competition claim under Connecticut Law, viz. 42 CGS
section 110(b), based on an allegation that Light Sources
is barred under the principal of res judicata from seeking
the cancellation of Cosmedico's VHR federal trademark in
this action, and that Plaintiffs' challenging the validity
of the VHR registered mark in the instant lawsuit
constitutes an unfair practice under 42 CGS 110(b).  Under
the established law, Plaintiffs are not barred from
challenging the validity of the VHR registered mark and/or
seeking the cancellation of said VHR mark, notwithstanding
that Light Sources initially opposed and which opposition
proceeding was dismissed by agreement before any decision
was rendered.  Jim Beam Brands v. Beamish & Crawford, 19
USPQ 2d 1352 (2 Cir 1991).

Light Sources incorporates herein by reference its
Memorandum of Law filed of record in this matter on or
about April 15, 2004 in opposition to Cosmedico's Motion
for Partial Summary Judgment to dismiss Plaintiffs' Second
Count seeking cancellation of said VHR mark, wherein the

issue of res judicata was fully briefed, and which motion was dismissed without prejudice.  See (A-302-340).

In the absence of any evidence that Light Sources or Tan Systems have engaged in any deceptive or unfair conduct or have otherwise offended public policy, there can be no CUPTA violation.  <u>Private Eye Sunglass</u>, supra.  Where an essential element of Cosmedico's CUPTA claim is lacking and/or fails to state such a claim, summary judgment is proper.

**VII.  Summary Judgment as to Count I of the Second Amended Complaint Should Also Be Granted.**

Count I of Light Sources and Tan Systems First Amended Complaint is seeking a declaratory judgment of non-infringement and a declaration that Cosmedico's registered VHR mark is unenforceable and/or invalid.  The Plaintiffs are entitled to judgment of non-infringement as Plaintiffs' use of the THR and TLR letters are not likely to cause confusion with Cosmedico's asserted marks for the reasons stated herein.

Cosmedico has stipulated and admitted Plaintiffs never used the registered COSMOLUX VLR with cat design mark (A-170).  Cancellation of the VHR mark is proper in view of the highly descriptive and/or generic use of the VHR term throughout the sun tanning industry as discussed herein.

The VHR mark is also unenforceable and/or invalid because of the deliberately false and deceptive statement Cosmedico made to the Examining Attorney's inquiry as to whether or not the "wording VHR has any significance in the relevant trade." But for the intentional false statement made in Cosmedico's response (A-192), the Examining Attorney would have required Cosmedico to disclaim the descriptive VHR term apart from the mark as shown. The attached exhibits clearly indicate Cosmedico was aware of the industry-wide use of the VHR acronym by others when Cosmedico advised the Examining Attorney otherwise.

Tan Systems and Light Sources are entitled to Judgment as to Count I of the Complaint.

## C O N C L U S I O N

In view of the undisputable facts and evidence of record, for the reasons stated herein, and the applicable authorities cited herein, it is requested that the Motion for Summary Judgment as to Defendant's First, Second, Fourth and Fifth Counterclaims, and Plaintiffs' Count I of the Second Amended Complaint be granted.

Respectfully submitted,

_____
Arthur T. Fattibene, CT06916
Counsel for Plaintiff
2480 Post Road
Southport, CT 06890

40

```
Tel:  203-255-4400
Fax:  203-259-0033
```