## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| LIGHT SOURCES, INC., and TAN SYSTEMS, INC., Plaintiffs, | : : : : : : | CIVIL ACTION NO.: 3:03-CV-874 (MRK) |
| v. | : | |
| COSMEDICO LIGHT, INC., Defendant | : : : | |
| COSMEDICO LIGHT, INC., Counterclaimant | : : : | |
| v. | : : | |
| TAN SYSTEMS, INC., and LIGHT SOURCES, INC., Counterdefendants, | : : : : | APRIL 22, 2005 |

## REPLY MEMORANDUM IN SUPPORT OF
## COSMEDICO'S MOTION FOR PROTECTIVE ORDER
## REGARDING THIRD PARTY DISCOVERY

The rambling opposition filed by plaintiffs, Light Sources, Inc. ("Light Sources") and Tan Systems, Inc. ("Tan Systems") to the present motion by defendant, Cosmedico Light, Inc. ("Cosmedico"), for a protective order regarding third party discovery in this action, goes far in reinforcing the need for the modest relief requested by Cosmedico. Plaintiffs should be reminded in the form of a protective order of their duty to provide

prior notice of third party discovery activities in accordance with Fed R. Civ. P. 5, 30 and 45.

Despite plaintiffs' attempt to obfuscate the issue in a duststorm of tangential details and baseless accusations, the point raised in Cosmedico's present motion for a protective order is quite simple: Cosmedico is entitled to, and demands, equal access to third party discovery sought by the plaintiffs in this action. Such equal access includes prior notice of the production of documents and things in response to a subpoena (or a reasonably contemporaneous production of copies of the produced materials), and prior notice of the scheduling of a third party deposition in response to a subpoena *duces tecum*. Plaintiffs' opposition to the motion reveals that, *but for the intervention of this Court*, plaintiffs will not provide fair notice of its third party discovery activities in accordance with the Federal Rules of Civil Procedure.

The Court should be aware of the following misstatements and omissions by plaintiffs in considering the present motion:

1.    Plaintiffs emphasize that the original subpoena and notice of deposition served in June, 2004, upon the third party, Osram Sylvania, were also served upon Cosmedico at around the same time. Cosmedico has never suggested otherwise. However, after the demanded document production and deposition were "effectively adjourned" (plaintiffs' opposition at 3) all of plaintiffs' subsequent communications with Osram Sylvania, including the actual document production, and all communications regarding the scheduling of the deposition, were conducted *ex parte* without prior (or even post) notice to Cosmedico, *until after Cosmedico filed this motion*.

2.    Although plaintiffs baldly speculate that they find it "highly doubtful that Osram Sylvania produced any documents [to plaintiffs] before Cosmedico had an opportunity to inspect the same" (plaintiffs' opposition at 8), the fact of the matter is that Cosmedico did *not* review or inspect any Osram Sylvania documents prior to their production by that third party and, indeed, did not even know that the production had occurred until many months after the fact, as stated in Cosmedico's moving papers. In fact, even after plaintiffs made a vague reference to "Osram Sylvania being 'on record'" in this case in late January, 2005, plaintiffs continued to refuse to provide Cosmedico with access to the materials produced by the third party in response to plaintiffs' subpoena, despite repeated requests to do so. As noted in Cosmedico's principal brief, it was only through the professional courtesy of Osram Sylvania's legal staff that Cosmedico was finally provided with copies of the subpoenaed documents fully *eight months* after plaintiffs received them.

The point here is that it is the plaintiffs' responsibility, having served the original subpoena demanding the production of documents from a third party, to provide the other parties with the prior notice required under the rules, and it is not the duty of the third party to do so. It is not sufficient for a party serving a subpoena to simply assume that the third party will do the plaintiffs' job in carrying out the duty of prior notice to other litigants. If plaintiffs chose to negotiate with a subpoenaed party to alter the terms of compliance with the subpoena, whether by permitting production of copies in lieu of a document inspection, or by rescheduling a deposition to a mutually agreeable date, they were not entitled to do so to the exclusion of Cosmedico. Plaintiffs remained obligated to

assure that Cosmedico had notice of the renegotiated terms of compliance, and an opportunity to participate in the actual discovery events. In this case, plaintiffs' assumption that Osram Sylvania had provided Cosmedico with access to the subpoenaed documents was wrong, and the plaintiffs' duty of prior notice went unfulfilled.

3.      Similarly, plaintiffs' representation that "Cosmedico was at all times aware of Plaintiffs' efforts to depose Osram Sylvania, as all the dates which were suggested by Osram Sylvania were pre-approved by Cosmedico" (plaintiffs' opposition at 7) reflects a lack of candor with this Court. By the time Cosmedico first learned (on April 4, 2005) that plaintiffs' had resumed their pursuit of a deposition from Osram Sylvania, plaintiffs had already negotiated with the third party, *ex parte*, for an April 25, 2005, deposition date. Two days later, Cosmedico's counsel was advised by Osram Sylvania's legal staff that plaintiffs' attorney, Mr. Fattibene, had cancelled the April 25 date and, instead, sought to take the deposition on either May 2 or May 9, 2005. Later that same day, Osram Sylvania counsel again contacted Cosmedico's attorney to advise that Mr. Fattibene had changed his mind again, and wished to return to the April 25 date privately arranged between plaintiffs and the third party. At *no time* during this entire series of communications did plaintiffs ever contact Cosmedico regarding the deposition.

Thus, again, it is only because of the professional courtesy of Osram Sylvania's legal staff that Cosmedico received any information whatsoever regarding the planned deposition, *until after Cosmedico filed this motion.* Only then did plaintiffs finally prepare and serve, on April 13, 2005, a formal notice of deposition setting the date of the Osram Sylvania deposition for May 9, 2005. Plaintiffs acknowledge in their opposition

(at page 1) that they had already received a copy of Cosmedico's present motion papers nearly a week before they prepared and served this notice of the third party deposition. Plaintiffs effectively are telling this Court that they feel entitled to ignore their duty of prior notice and rely instead upon a third party to provide the required notice to the other litigants.

4.     Plaintiffs' misfire in their attempt to equate their *ex parte* discovery negotiations with Osram Sylvania to Cosmedico's inspection of the Tan Systems documents located in Georgia.  The differences between these two series of events far outweigh any perceived similarities:

First, while plaintiffs sought discovery from Osram Sylvania through the formal process of a subpoena (with the attendant requirements of prior notice to all parties required by the federal rules), Cosmedico's inspection and selection for copying of documents from the Tan Systems files was undertaken pursuant to authorization, *granted freely and equally to all parties to this litigation*, provided by Mr. Greg Henson, the principal of Heartland Tanning, the purchaser of the business assets of plaintiff Tan Systems.  A copy of Mr. Henson's letter, provided to all parties to this action, is attached at Tab 1 and clearly shows that all parties to this litigation have been provided with equal access to the entirety of the Tan Systems documents:

> On behalf of Heartland Tanning, the purchaser of certain business assets from Tan Systems, Inc., including the corporate files of Tan Systems, I hereby confirm my previous agreement to make those corporate files available for inspection and copying, in accordance with the rules of procedure applicable in federal district courts, for any and all purposes related to the above-referenced litigation. Specifically, the files will be made available, upon reasonable notice, to counsel of record in this action, as well as to Ms. Kristin Tiffany and her attorney, Ms. Counts. Documents produced in discovery from these files shall be used for no purposes outside of the litigation.

Second, Mr. Fattibene's demand to review the subset of Tan Systems documents selected by Cosmedico for copying is completely different from Cosmedico's request for copies of the raw Osram Sylvania production.  Plaintiffs have full and equal access to the Tan Systems documents, and can conduct their own inspection and selection of potentially useful documents at their convenience, just as Cosmedico did.  In contrast, Cosmedico (despite its business relationship with Osram Sylvania) does not have full and equal access to that third party's files.

Moreover, Cosmedico's request to plaintiffs for the full set of the produced Osram Sylvania materials does not invade any work product of plaintiffs' lawyer, whereas Cosmedico's selection and designation of a portion of the Tan Systems documents for copying reflects the mental impressions of Cosmedico's attorney and, frankly, the significant effort and expense invested in reviewing the unsorted mass of documents.  Plaintiffs' refusal to avail themselves of the unfettered access to all of the Tan Systems documents they have long enjoyed is no reason to invade the attorney work product inherent in Cosmedico's selection of potentially useful documents from that same open source.

Third, plaintiffs fail to disclose to this Court that the buildings in which the Tan Systems documents have been stored still are owned by plaintiff Tan Systems' principal, Ms. Kristin (Tiffany) Crumpler.  Cosmedico has also been advised that Ms. Crumpler, as the owner of the property, has keys and access to the Heartland Tanning facilities. Moreover, plaintiffs' attorney has previously admitted to Cosmedico's counsel that, even

after the sale of the Tan Systems business assets to Heartland Tanning, Ms. Crumpler has reviewed, selected, copied and removed documents from the Heartland facility in connection with another litigation matter.

Surprisingly, despite plaintiffs' complaint that they somehow have been denied access to the Tan Systems documents, they are still able to represent to this Court that "most of" the Tan Systems documents selected for copying by Cosmedico are "totally irrelevant and immaterial" (plaintiffs' opposition at 4).

5.     Plaintiffs have made several serious misstatements in their opposition regarding the separate litigation now pending between Cosmedico and Light Sources in the District of Massachusetts. At the outset, plaintiffs' statement that the Massachusetts action involves "the same trademarks which are the subject of Cosmedico's . . . claims before this Court" (plaintiffs' opposition at 12) is simply false. Although both this action and the Massachusetts litigation include unrelated claims involving Cosmedico's federally registered VHR trademark, the Massachusetts action principally concerns a different alleged trademark fraudulently registered by Light Sources.[1] The allegations in the Massachusetts action involving Cosmedico's VHR federal trademark registration are directed to infringing conduct different from the acts of Tan Systems and Light Sources involved in this case. Plaintiff Tan Systems is not named or otherwise involved in any of the matters alleged in the Massachusetts action.

---

[1]  In a direct and malicious attack on Cosmedico's extensive family of trademarks based on the word root "Cosmo-", Light Sources sought and fraudulently obtained a trademark registration for the mark "CosmoTan" even though, to Cosmedico's knowledge, Light Sources has never used that mark in commerce and never had any *bona fide* intention to begin using the mark. Cosmedico's Massachusetts action seeks cancellation of the fraudulent registration.

Cosmedico learned of the fraudulent CosmoTan trademark registration involved in the new Massachusetts action after the settlement conference referenced by plaintiffs in their opposition.  Moreover, at that time, Cosmedico was both candid and steadfast with plaintiffs and with the Court regarding Cosmedico's insistence that the unauthorized use of the federally registered VHR mark by others would not be tolerated.  The filing of the Massachusetts action does not in any way impeach Cosmedico's good faith in seeking either a negotiated settlement of this action or fair relief from plaintiffs' current discovery abuses.[2]  Indeed, Light Sources' latest imitation of Cosmedico's federally registered VHR trademark (as shown at page A-34 of plaintiffs' appendix to its opposition) amply demonstrates its own bad faith, both in the marketplace and before this Court, where it has repeatedly represented that it has not marked products with the designation "VHR."

It is ironic that plaintiffs continue to prosecute this action concerning the THR and TLR products that are no longer made and for which plaintiffs have no present or prospective customers, while at the same time characterizing as "moot" their own improper discovery practices that are likely to recur in this litigation in the absence of the requested protective order.   Because plaintiffs plainly remain unwilling even to acknowledge, let alone comply with, the requirement of prior notice attendant to third party discovery, the relief requested in the instant motion remains appropriate and

---

[2] Contrary to plaintiffs' snide characterization at page 13 of its opposition (footnote 3), Light Sources was not "burned by Cosmedico" when Light Sources voluntarily dismissed, with prejudice, its opposition to the registration of the VHR trademark in the United States Patent and Trademark Office.  Light Sources' principal, Christian Sauska, testified in his deposition in this action that Cosmedico had made no binding promise at that time, and that Light Sources' agreement to dismiss the opposition was based merely on the *hope* of receiving business from Cosmedico's German parent company. The witness further testified that Cosmedico did, in fact, order and pay for the products contemplated, again directly contradicting the false statement in plaintiffs' footnote. (Light Sources Rule 30(b)(6) deposition, trans. at 87-90, 106-108)(Tab 2)

necessary to avoid future disputes regarding third party discovery, and entry of the proposed Order submitted with Cosmedico's moving papers is respectfully requested. In addition, because plaintiffs' reckless disregard for the facts, particularly with respect to the substance of Mr. Sauska's deposition testimony and the allegations of the Massachusetts complaint, has greatly increased the burden and expense to Cosmedico of responding to plaintiffs' misstatements, Cosmedico respectfully requests leave to apply for an award of its costs incurred in preparing this reply and for attending any hearing that may be required to address the issues discussed herein.

Respectfully submitted,
Cosmedico Light, Inc.,
by its Attorneys,

Dated: April 22, 2005

JAMES W. OLIVER
Federal Bar No.: ct02510
Berman and Sable
100 Pearl Street, 10th Floor
Hartford, CT 06103
Tel:    (860) 527-9699
Fax:    (860) 527-9077

DALE A. MALONE
Federal Bar No.: ct25020
Banner & Witcoff, Ltd.
28 State Street
Boston, Massachusetts 02109
Tel:    (617) 720-9600
Fax:    (617) 720-9601

## **CERTIFICATION OF SERVICE**

This is to certify that a copy of the foregoing document was served by fax and

mail, first class postage prepaid, on this 22nd day of April, 2005, to all counsel of record

as follows:


Arthur T. Fattibene, Esq.
Paul A. Fattibene, Esq.
2480 Post Road
Southport, CT  06490

Cynthia L. Counts, Esq.
Counts & Associates
1384 Lanier Place
Atlanta, GA 30306


Dale A. Malone

**Tab 1**

# HEARTLAND
## *America's Best Tan*™

1251 NE Port Dr. • Lee's Summit Missouri 64064 • 600-554-8266 • 816-795-1171 • 816-795-2981 FAX • www.heartlandtan.com

July 7, 2004

**By Fax and Mail**

Arthur T. Fattibene, Esq.
Fattibene and Fattibene
2480 Post Road
Southport, Connecticut 06890

Cynthia L. Counts, Esq.
Counts & Associates
1384 Lanier Place
Atlanta, Georgia 30306

**Re: Light Sources, Inc. v. Cosmedico Light, Inc., 3:03 CV 874 (MJK) (D.Conn.)**

Dear Counsel:

On behalf of Heartland Tanning, the purchaser of certain business assets from Tan Systems, Inc., including the corporate files of Tan Systems, I hereby confirm my previous agreement to make those corporate files available for inspection and copying, in accordance with the rules of procedure applicable in federal district courts, for any and all purposes related to the above-referenced litigation. Specifically, the files will be made available, upon reasonable notice, to counsel of record in this action, as well as to Ms. Kristin Tiffany and her attorney, Ms. Counts. Documents produced in discovery from these files shall be used for no purposes outside of the litigation.

Very truly yours,

Gregory Henson

**Tab 2**

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - -X
                                  :
LIGHT SOURCES, INC.               :
and TAN SYSTEMS, INC.,            :
            Plaintiffs,       :CIVIL ACTION NO:
                              :03-CV-874(MJK)
VS                                :
                              :Hon. Mark J. Kravitz
COSMEDICO LIGHT, INC.,            :
            Defendant,            :
                                  :
- - - - - - - - - - - - - - -X

    Deposition of Christian L. Sauska, taken pursuant
to the Federal Rules of Civil Procedure, before
Kimberly M. White, CSR, LSR, (Lic#SHR433) Licensed
Shorthand Reporter and Notary Public within and for
the State of Connecticut, held at the Fattibene and
Fattibene, 2480 Post Road, Southport, Connecticut, on
July 20, 2004 at 10:02 a.m.

DEL VECCHIO REPORTING SERVICES
LICENSED SHORTHAND REPORTERS
117 RANDI DRIVE
MADISON, CT 06443
203-245-9583  FAX 203-245-2760   800-839-6867

HARTFORD                              STAMFORD

A    Because of the "generic meaning VHR," as it
says here, "acquired throughout the tanning
industry."

"VHR" is known as -- as the acronym "Very
High-output Reflector."

Q    And so did Light Sources perceive some
competitive threat if Cosmedico were able to get a
trademark registration?

A    Possibly.

Q    Well, did, in fact, Light Sources perceive
such a threat at that time?

A    I don't remember back in '97 on that issue
how we felt.  It's too long ago.

Q    Okay.  I'm just trying to understand what
motivated Light Sources to -- to file this
opposition.

MR. A. FATTIBENE:  He answered the
question.

A    I did.

BY MR. MALONE:

Q    It -- it costs time and money to pursue an
opposition, doesn't it?

A    I believe we found that it's a -- it's --
it's inappropriate to use an industry acronym as
one's trademark.

Q    Okay.  Did Light Sources perceive that that
would be an unfair competitive advantage for
Cosmedico, to have a trademark registration for
"VHR"?

A    Possibly.

Q    What happened in the opposition proceeding?
How did it end up?

A    My recollection is that we had some
possible -- possible business with Cosmedico at the
time; and in view of that, we dropped the opposition.
And no business materialized.

Q    What business was being discussed at that
time with Cosmedico?

A    I think one of Cosmedico's companies was or
is in Germany, which is a medical equipment
manufacturer, and they needed lamps for dermatology
use; and we were making that for them or we were in
conversations to manufacture that for them.

Q    So during the course of this opposition
proceeding, there were discussions between Light
Sources and Cosmedico about this possible business
arrangement?

A    Yes.

Q    Who was involved in those conversations?

A    Well, I believe it was Dave Myers and

88

myself.

    Q    And who were your speaking with on the
Cosmedico side?

    A    I -- I'm not sure.  Must have been Jerry
Frank and/or Mr. Jorg Wolff.

    Q    Who is Mr. Wolff?

    A    Mr. Wolff is Mr. Wolff.

        MR. A. FATTIBENE:  He mentioned the first
        name.

BY MR. MALONE:

    Q    Can you spell the first name for the court
reporter, please.

    A    I believe it's Y-o-r-g.

        COURT REPORTER:  Y-o-r-g, Yorg?

        THE WITNESS:  Well, he says Yorg, and I
        believe that's how German's pronounce it.

        COURT REPORTER:  Okay.  I just want to
        make sure I heard you right.

BY MR. MALONE:

    Q    Did you understand Mr. Wolff to be
affiliated with the German Cosmedico company at that
time?

    A    I understood that he owns all of the
Cosmedico-related companies, and I still believe that
today.

89

Q    Okay.  What was discussed specifically
between you and Mr. Myers and Mr. Frank and Mr. Wolff
during the opposition proceeding regarding this
potential business deal?

A    I believe that there was -- since Cosmedico
had the medical company manufacturing equipment,
there was a legitimate possibility of long-term need
of similar lamp types for that use, and we were one
of the likely candidates to manufacture that for
them.

Q    Okay.  Did Cosmedico promise to buy those
products from Light Sources?

A    I believe they did buy some.  I think we
made one shipment.  What they promise or what they
didn't promise, I don't remember specifically.

Q    At what point in these conversations did
Light Sources agree to drop its opposition in the
trademark office?

A    I don't have accurate recollection right
now.

Q    Okay.  Was there any sort of written
agreement between Cosmedico and Light Sources to
resolve the trademark opposition?

A    I don't know.  I don't remember.

Q    Okay.  Do you recall whether there was any

written agreement between Light Sources and Cosmedico

for the purchase and sale of -- of these

dermatological bulbs that we were talking about?

    A    Well, I'm pretty sure we received a purchase

order.  I'm pretty sure we made a shipment, and we

got paid.

    Q    Okay.

        MR. MALONE:  I would request those

        documents be located and produced to us,

        please.

    A    The probability of having that around is

very unlikely.  A '97 invoice, very unlikely.

BY MR. MALONE:

    Q    Okay.  Does Light Sources have a document

retention policy?

    A    Good question.  I have no -- I have to ask

the controller what it is.  I don't know.

    Q    Okay.

    A    But my guess is that seven-year-old invoices

are not -- not around.

    Q    All right.

        MR. MALONE:  Well, I would also ask that

        if there is a written document retention

        policy that that be provided to us, as well,

        please.

A    That's what I can recall right now, yes.

Q    Okay.  Who paid for Tan America's
advertising of products that included Light Sources's
bulbs?

A    I am pretty sure they did.

Q    Okay.  Did Light Sources do any cooperative
advertising with Tan America around that time?

A    I don't remember.

Q    Was that a business practice of Light
Sources at the time?

A    I don't remember.

Q    Okay.  So regardless of whether it's
characterized as greater or lesser, in spite of the
expense and detriment that Light Sources said it
would endure, it agreed to allow the "VHR"
registration to issue to Cosmedico; did it not?

A    Yes.

        MR. A. FATTIBENE:  I'll object to the
    form of the question.

        MR. MALONE:  Did you get his answer?

        COURT REPORTER:  I did.

        MR. MALONE:  Okay.  Thank you.

BY MR. MALONE:

    Q    Why did Light Sources agree to that?

        MR. A. FATTIBENE:  I think he answered

the question.

A    I gave you the answer earlier.

BY MR. MALONE:

Q    It was because of potential business from Cosmedico?

A    Yes, as I believe.

Q    Okay.  And so Light Sources valued that potential business greater than the expense and detriment that it claims it would have suffered from -- from allowing the registration to issue?

A    That was our position then at the time.

Q    Okay.  Does Light Sources feel that Cosmedico in any way backed out or reneged on the deal that led to the settlement of the opposition?

A    I'm not sure it -- I don't recall that there was a substantial offer on the table from which they reneged.

Q    Okay.

A    It's -- it was a general understanding that this is something that they will be planning to do for which they needed lamps, and the expectation was that that would be purchasing it from us.

Q    They said they would consider buying the lights from Light Sources, but they didn't make a promise?

108

A    I don't remember a promise.

Q    Okay.  And in fact, they did buy at least
one shipment of bulbs?

A    Yes, I think so.

Q    Okay.  Did any -- at any point after the
opposition was revolved -- resolved, did Light
Sources feel that it had been shortchanged in regard
to that transaction with Cosmedico?

A    Well, the time came when we realized that
what we expected didn't happen and it wasn't going to
happen, and then we felt we were shortchanged.

Q    Did Light Sources feel that Cosmedico had,
in any way, obligated itself to do more than it did
as far as buying products from Light Sources?

A    I -- I don't think I would go that far.

Q    Okay.  So it was just a business deal that
didn't work out as well as Light Sources had hoped?

A    Probably.

Q    Okay.

        COURT REPORTER:  Excuse me.

        MR. MALONE:  Uh-huh.

        COURT REPORTER:  Can I change my paper
    real quick?

        MR. MALONE:  Yes.

        COURT REPORTER:  Thank you.