UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


LIGHT SOURCES, INC., and
TAN SYSTEMS, INC.,
        Plaintiffs

    v.                          Civil Action
                              No. 303 CV 874 (MRK)

                              At New Haven
COSMEDICO LIGHT, INC.,
        Defendant         August 4, 2005


**PLAINTIFFS', LIGHT SOURCES, INC. AND
TAN SYSTEMS, INC., OPPOSING MEMORANDUM
TO
NON-PARTY MOVANT, OSRAM SYLVANIA, INC.'S
MOTION FOR PROTECTIVE ORDER**


                              Arthur T. Fattibene
                              Paul A. Fattibene
                              Fattibene & Fattibene
                              2480 Post Road
                              Southport, CT 06890-1218


ORAL HEARING REQUESTED

**NATURE OF PROCEEDING**

On July 22, 2005, Plaintiffs, Light Sources and Tan Systems Inc. (herein Plaintiffs unless otherwise specified) were served with Non-Movant Osram Sylvania's (Osram) Motion and supporting papers for a Protective Order.

**STATEMENT OF FACTS**

Pursuant to the Court Scheduling Order of June 2, 2994 (Doc #47), Plaintiffs, on July 13, 2004, served on Osram a notice of deposition together with a subpoena to produce certain designated documents and things at the deposition of Osram by its designated officer or representative scheduled for July 22, 2004. Attached as Addendum A (A-1-8)[1] is a copy of the Subpoena served on Osram requiring that Osram produce (1) the earliest dated documents relating to the manufacture and sale of fluorescent tanning lamps sold to Defendant, Cosmedico Light, that bore the alleged trademarks in suit; (2) a sample of each such lamp; (3) documents relating to Cosmedico's trademarks in suit and (4) sales literature in Osram's possession and control that related to the trademarks in suit, viz. VHR; VLR; and COSMOLUX VLR with cat design.

---

[1] (A- ) refers to the Plaintiffs' attached Addendum followed by page number.

1

The requests were quite simple, unambiguous and uncomplicated.

Because of Osram's procrastination, the deposition scheduled for July 22, 2004 was adjourned, as the discovery period ended before the deposition could be rescheduled. Accordingly, as required by the Court's scheduling order (Doc #47), the parties filed their respective Motions for Partial Summary Judgment that were due by August 23, 2004.

While the deposition of Osram was temporarily adjourned and while the parties' Motions for Partial Summary Judgement were pending, Osram did produce on August 2, 2004 (1) copies of four (4) etches (2) approximately 113 invoices allegedly covering the period of "1998 to present" and (3) a one (1) page handwritten list of lamps ordered by KOSMEDICO[2] dated November 24, 1992. <u>None of these documents have been deemed to be confidential</u>. Attached is Osram's covering letter of August 2, 2004 (A-9).

However, it must be noted that while Osram produced some 113 invoices, the fact is that all the invoices produced have been redacted to delete the important and relevant information. Attached hereto by way of example (A-10) is a sampling of an invoice showing that the unit

---

[2] KOSMEDICO is not Cosmedico Light, Inc., the Plaintiff herein. KOSMEDICO is a German corporation whose sales are limited to the European market and was apparently a predecessor of COSMEDICO Light, Inc., who, according to Mr. Frank, was not organized as an entity until sometime in 1992.

2

net price and net amount of the sales has been redacted. Also significant is the fact that Osram redacted from the produced invoices the number of <u>package quantities</u> and <u>quantities of defective lamps disallowed</u>, which is a critical factor to be considered in the Polaroid analysis relating to the quantity factor in determining "likelihood of confusion."

On October 6, 2004, Osram produced additional documents that included nine (9) pages illustrating samples of eighteen (18) additional box labels, and a promise to produce additional invoices.  See attached Osram covering letter dated October 6, 2004 (A-11).  In the letter (A-11), Osram admits that "We (Osram) do not make VLR or VHR lamps standing along.  <u>Both marks are always used in conjunction to another trademark</u>." (Emphasis added).  As a result, Osram, the manufacturer, or Cosmedico, the distributor, cannot and has not produced a single lamp that can evidence any alleged use of the asserted trademarks VHR and VLR, per se, in commerce.

On October 8, 2004, Osram produced one sheet that listed seventeen (17) lamps that allegedly correspond to the box labels Osram produced.  (A-12, 13).

On October 25, 2004, Osram also produced allegedly "copies of invoices dating back from 1993 to current."

This group of invoices was also redacted of the critical information as noted herein. See attached Osram covering letter (A-14) with a sample redacted invoice (A-15). Approximately 53 invoices are included in this group, none of which are designated as "confidential" or "highly confidential".

Osram produced only two (2) physical lamp samples, one bearing the COSMOLUX VHR mark with cat design (A-16) and one bearing the composite COSMOLUX VLR.T mark with cat design (A-17).

On March 4, 2005, in denying in part and granting in part the parties respective Summary Judgment Motions, the Court also reopened discovery, and extended discovery to July 1, 2005.

Pursuant to the Court's Order of March 4, 2005, reopening discovery and because the original subpoena (A-1-9) served on Osram became stale, Plaintiffs re-served Osram with a new Subpoena on April 13, 2005, scheduling a deposition for May 9, 2005, a copy of which is attached hereto as (A-18-28).

The renewed subpoena and notice of deposition (A-18-28) served on Osram on or about April 13, 2005, requested essentially the same documents 1 to 4 as requested in the first subpoena (A-1-9). In addition, the second issued

4

Subpoena (A-18-28) requested (E) All Agreements between Osram and Cosmedico relating to the manufacture of the lamps bearing the asserted trademark (Category F) a specimen of the box labels and instruction sheets associated with the asserted trademarks and (G) all communications exchanged between Osram and the FDA relating to compatibility of lamps bearing the asserted trademarks.

On May 4, 2005, Plaintiff received a host of documents which <u>Osram volunteered</u>, allegedly for the reason that the Osram designated deponent, Mr. Schlitt, had allegedly reviewed the documents in preparation for the deposition. See attached covering letter (A-29). (Osram Memorandum, page 3, lines 15, 16).

Pursuant to the outstanding Protective Order, <u>which Osram has not signed on to</u>, Osram has wholesaledly designated every document produced on May 4, 2005 as "Highly Confidential-For Attorney's Eyes Only". By Osram's count, these volunteered Highly Confidential-AEO documents number approximately 273 pages (Osram Memorandum page 3, line 15).

A review of Osram's alleged Highly Confidential AEO designated documents will evidence that the vast bulk of the documents are dated between June 6, 1988 and December 1993, which, for the most part, <u>precede the incorporation</u>

5

of Cosmedico Light, the defendant herein. Only a few of the alleged highly confidential documents are dated between January 1994 and June 1998. No document subsequent to June 1998 has been noted or produced in the group of said designated highly confidential documents. The causes of action asserted in this lawsuit did not arise until 2002, some four (4) years after the date of the latest document designated as Highly Confidential AEO. A study of the 273 pages of alleged Highly Confidential-AEO documents will evidence that they are a random, disassociated collection of documents that were generated in the normal course of business with no effort to maintain the same confidential, and do not relate to any type of current sensitive information or trade secrets.

On June 22, 2005, Plaintiffs, pursuant to the terms of the outstanding Protective Order, objected to the highly confidential designation. After discussing Plaintiffs' objections in a telephone conversation with Osram's counsel on July 5, 2005, no agreement could be reached concerning Osram's document designations.

On July 18, 2005, Osram de-designated thirteen (13) documents which Osram asserts were "originally designated confidential" and which documents have now been assigned

6

Bates Nos. 00169 to 00181.[3] (A-30-32). Osram's de-designating these 13 documents is a joke, since documents 00169-00171 are box labels (e.g. A-31) which are required to be placed on boxes in which the lamps are shipped by FDA regulations which make them very public. The de-designated documents 00172-00175 and 00177-00181 are <u>simply blank production forms</u> for the years 1993 and 1994, a sample of which is attached as (A-32).

## A R G U M E N T

I. **THE ALLEGED HIGHLY CONFIDENTIAL DESIGNATED DOCUMENTS OSI 00181 TO 00441 PRODUCED BY OSRAM SYLVANIA WERE VOLUNTEERED.**

On page 5 of Osram's Memorandum, Osram quotes Rule 26 Fed.R.Civ.P. to the extent that Rule 26(c) permits the issuance of a protective order "to protect a party or person from annoyance, embarrassment, oppression and undue burden or expense", and that the party seeking the protective order <u>must show good cause</u>. Nowhere in its Memorandum does Osram identify any specific document allegedly designated as highly confidential-AEO that is responsive to any of the subpoenaed document requests. In fact, the designated deponent (Mr. Schlitt) testified on

---

[3] The group of documents produced on May 4, 2005, alleged to be highly confidential AEO <u>were not identified by any Bates Nos.</u> when initially produced.

7

deposition <u>he never saw the Subpoena PX-30 nor the notice of deposition PX-31A</u> (A-18-28), nor did the designated deponent bring to the deposition any of the subpoenaed documents and things that were specifically requested (A-35). Where a person <u>freely volunteers a host of miscellaneous unrelated documents that were not requested and that were generated before the cause of any legal action arose</u>, as is obvious in Osram's designated highly confidential documents OSI -00182-00441, one will be hard pressed to assert that any such <u>volunteered document production amounts to annoyance, embarrassment, oppression or undue expense or burden</u>.

Mr. Schlitt, the designated deponent, admitted he never saw the subpoena PX-31 or the Notice of Deposition PX-31A and thus had no knowledge as to what was requested and/or of the topics to be discussed. (A-23, 24). Under such facts, it is not understood how Osram was annoyed, embarrassed, oppressed or put to undue burden or expense within the meaning of Rule 26(c), Fed.R.Civ.P. When Mr. Schlitt admits he had no knowledge of what was requested, why Mr. Schlitt allegedly reviewed the volunteered documents OSI 00182 to 00441, which were primarily generated by Osram Sylvania's <u>predecessor company, GTE Sylvania, back in 1988 and the early 1990's</u>, is a mystery.

8

Plaintiffs cannot be faulted or responsible for Osram's unsupported allegations of being subjected to annoyance, embarrassment, oppression, undue burden or expense when its designated and allegedly knowledgeable deponent, admits that he is without knowledge of the subpoenaed documents requested and/or of the topics of inquiry.

Osram volunteered the host of documents virtually on the eve of the deposition date and designated them as highly confidential as a distraction to consume Plaintiffs' counsel's time and energy in preparation for the deposition of Osram, to obstruct discovery, and the deposition which was scheduled for May 9, 2005.

This Court may judicially notice that Osram's wholesale designation of the volunteered documents as highly confidential-AEO is much the same tactic used by Cosmedico in its production of documents by its wholesale designating Cosmedico's requested documents as highly confidential when in fact they obviously were shown not to be confidential at all.  Such tactics ought not be tolerated.

On page 6 of Osram's Memorandum, Osram argues that "Courts will protect information from being disclosed depending upon the extent to which the information is known outside of the business, the extent to which the

9

information is known to those within the business, the measures taken to guard the secrecy of the information and the value of the information to the business and its competition, citing Uniroyal Chemical 22 FRD 53, D.Conn. 2004. However, while Osram cites the broad general rule, significantly, Osram does not remotely attempt to apply the rule to the facts of this case.

In actuality, information relating to customers, costs, prices, etc. are generally known to those within and outside of the business. Between 1988 to 1994, which are the dates when most of the designated highly confidential documents were generated, it can be judicially noticed that many employees of GTE Sylvania and Osram have either left, resigned, retired and/or were terminated in view of the break-up of GTE Sylvania and the resulting subsequent mergers and/or sell offs. Because the manufacture of sun tanning lamps is a relatively close industry, it should be no big surprise that the former employees of GTE Sylvania or Osram Sylvania would find employment with another competitive manufacturer of sun tanning lamps, such as e.g. Phillips, Voltarc or Light Sources, who are generally considered as the big three of the only seven such known manufacturers of sun tanning lamps, two of which, Voltarc and Light Sources, being based in Connecticut.

One such former employee of GTE and Osram Sylvania is Mr. David Myers, a former Light Sources Vice President who was employed by GTE and Osram Sylvania from 1980 to about late 1993 or early 1994. (A-47-49). During his employment at GTE and Osram, Mr. Myers functioned as production manager, plant manager, manufacturing manager, and many different variations of production manufacturing, product line manager, and division manufacturing manager. Between 1980 to 1994, the time period the alleged confidential documents were generated, Mr. Myers was obviously knowledgeable of Osram's business and a co-employee with Mr. Schlitt.

As within the business of Osram, it will be noted that many of the designated highly confidential documents have been widely circulated between many individuals, both within and without the business of Osram <u>without any effort to guard any alleged secrecy and/or confidentiality of the information that has been designated as highly confidential</u>. Significantly, Osram's Memorandum is totally silent as to what measures Osram took to guard any of the information that is disclosed in <u>the documents Osram produced voluntarily</u>. A review of the alleged highly confidential documents will evidence that they do not disclose any trade secrets or sensitive technical,

11

financial, sales, pending patent applications, or other information of any sensitive nature whereby Osram may reasonably fear a potential competitive injury resulting from the disclosure thereof, as required in paragraph 2 of the Protective Order.  Nor has Osram demonstrated any specific injury by any disclosure thereof.

Furthermore, any information disclosed in the alleged highly confidential documents is totally obsolete and is of no value to either Osram's business or its competitors.  In fact, GTE, who generated most of the documents Osram volunteered to produce, no longer exists.  By way of example, Mr. Schlitt testified as to the obsolescence of document 00387 (PX-73) on deposition (A-41, 42).  The lack of commercial value in the designation highly confidential is self evident.  However, lack of value and/or of confidentiality, does not mean that they lack evidentiary merit.  Merely because a document is generated in the course of business does not render it confidential or highly confidential within the meaning of Rule 26, Fed.R.Civ.P., or paragraph 2 of the Protective Order.

## II. OSRAM'S MEMORANDUM IS TOTALLY LACKING IN ANY SHOWING OF GOOD CAUSE.

Osram's legal argument consists of approximately one page which attempts to set forth the legal principles. One-half of page 6 is devoted simply to a <u>series of unsupported conclusory and general statements</u> to the extent that the documents contain "sensitive issues of quality control, marketing plans, pricing, production forecasts, identification and information concerning OSI customers, legal issues, highly sensitive and proprietary information concerning OSI and/or its customers", disclosure of which would put Osram in a "disadvantageous commercial position." Such conclusory statements, unsupported by any facts, are <u>certainly not a showing of good cause required by Rule 26(c), Fed.R.Civ.P.</u>  A party ought not require the Court to make the required showing of "good cause" for justifying the alleged "highly confidential" designation <u>in the absence of Osram's failure to carry its burden of proof</u>.

## III. THE AFFIDAVIT (DECLARATION) OF SUSAN WRIGHT DOES NOT ESTABLISH ANY SHOWING OF GOOD CAUSE.

Paragraphs 1 to 11 of Ms. Wright's affidavit merely recite Osram's chronological version of the events relating to the production of the alleged highly confidential documents in dispute.

13

Paragraphs 12 to 16 of Ms. Wright's affidavit seek to merely classify the designated confidential documents into specific categories. Ms. Wright's affidavit, like Osram's legal argument, <u>is completely devoid of any "showing of good cause" required by Rule 26(c)</u>.

Every document generated by a business can be "pigeon holed" into a category as defined by Ms. Wright in paragraphs 11 to 16. Such "pigeon holing" falls far short of establishing any showing of good cause mandated by Rule 26(c).

Ms. Wright, in paragraph 8 of her affidavit, expressly states that the Bates numbered, allegedly highly confidential documents OSI-00181 to 00441, were produced "in an abundance of caution and with scant time for review, solely because Mr. Schlitt had reviewed them prior to his deposition." By Ms. Wright's sworn statement, the alleged "highly confidential" documents <u>were not produced subject to any subpoena served on Osram</u>. No explanation is given as to why Mr. Schlitt elected to review the designated documents <u>when he admitted he did not see the subpoena or the notice of deposition</u> and <u>had no prior knowledge of the topics and/or the document requests specified in the subpoena and notice of deposition</u>.

Osram's voluntary production of documents OSI 00181 to 00441 and designating them as highly confidential is nothing more than a sham and an attempt to obstruct discovery to benefit its principal customer, Cosmedico.

**IV.  OSRAM'S REQUEST FOR SANCTIONS SHOULD BE DENIED.**

Osram's requests sanctions for the reason that "Plaintiffs' failure to act in good faith to resolve this matter is directly contrary to the terms of the Protective Order." Contrary to Osram's self-serving arguments, Plaintiffs' counsel, both in letters and in an extensive personal phone call with Ms. Noel, attempted to resolve the dispute. Ms. Noel persisted in maintaining with broad generalization that the disputed documents were related to sensitive marketing plans, customer relationships, production forecasts, etc., without making any showing as to how Osram would be damaged by any disclosure of the information contained therein. Ms. Noel either completely disregarded and/or did not realize that the documents in dispute were generated for the most part in the time period of 1988 to 1994, long before the dispute between the parties arose. Ms. Noel apparently did not even realize that the documents Osram designated as highly confidential were generated by GTE and are grossly obsolete. The fact

15

is that while the documents are no longer worthy of a highly confidential designation, they do have evidentiary merit and Plaintiffs should be permitted to use them without any restriction of a self-serving designation of a document as highly confidential.

According to Ms. Noel's argument, one is lacking in "good faith" if one does not agree with her generalized conclusion that the disputed documents contain confidential and sensitive information even though no "good cause" has been shown or given.

### V.  OSRAM HAS EFFECTIVELY WAIVED THE HIGHLY CONFIDENTIAL AEO DESIGNATION.

Osram's deposition by its designated deponent, Mr. Steve Schlitt, occurred on May 9, 2005. At the deposition, several alleged Highly Confidential documents now in dispute were marked for identification during the deposition. During the deposition, Osram reserved the time period within which the deponent could review the transcript to determine what portion of the document or deposition would be designated Confidential (A-43-44). A copy of Osram's deposition was made available on June 1, 2005. Mr. Schlitt executed the deposition transcript on July 11, 2005. (A-45) No portion of the deposition

transcript was designated to be Confidential or Highly Confidential-AEO, within said designated time period. Thus, the alleged highly confidential designation of any information disclosed during the Osram deposition has been waived.

### VI. AS OSRAM HAS NOT PRODUCED THE DOCUMENTS REQUESTED BY THE SUBPOENA, OSRAM IS NOT ENTITLED TO ANY PROTECTIVE ORDER.

As evident herein, Osram did not comply with the subpoenaed request for documents and things. Osram's designated deponent, Mr. Schlitt, admitted he brought no requested documents or things with him to the deposition. Further, Mr. Schlitt admitted he did not read or see either the Subpoena or the associated notice of deposition. The designated deponent, Mr. Schlitt, further admitted (A-36-39) he was not the most knowledgeable person as to a number of topics noted in the notice of deposition. Osram's production of the disputed documents OSI 00182-00441 with the excuse that Mr. Schlitt allegedly reviewed them is insufficient cause for granting any requested protective order. Under the Court's inherent powers to control discovery, it would appear that this Court has both the authority and justification to compel Osram to comply with the subpoena requests and to produce a deponent who is

knowledgeable of designated topics to which Mr. Schlitt admitted he lacked knowledge therein.

## C O N C L U S I O N

For the reasons stated herein, and in view of Osram's total failure in establishing the requisite showing of "good cause" for maintaining the Highly Confidential-AEO designation with respect to OSI's documents 00182-00441, the Motion should be denied. Osram's request for sanctions should also be denied. It appears that if any sanctions are justified, they should be awarded in favor of Plaintiffs and that Osram, now before the Court, be compelled to comply with the Subpoena served on it.

Respectfully submitted,

_____
Arthur T. Fattibene, CT06916
Counsel for Plaintiff
Fattibene and Fattibene
2480 Post Road
Southport, CT 06890
Tel: 203-255-4400
Fax: 203-259-0033

## Certificate of Service

```
I hereby certify that a copy of

       PLAINTIFFS', LIGHT SOURCES, INC. AND
    TAN SYSTEMS, INC., OPPOSING MEMORANDUM
                         TO
     NON-PARTY MOVANT, OSRAM SYLVANIA, INC.'S
             MOTION FOR PROTECTIVE ORDER


has been served by first class U.S. mail, postage prepaid,
this 4th day of August 2005, on opposing counsels of record
as follows:

James Oliver                    Diane A.D. Noel
Jose A. Aquiar                  Burns & Levenson
Berman and Sable                125 Summer Street
One Financial Plaza             Boston, MA 02110
20th Floor
Hartford, CT 06103



Dale A. Malone
Banner & Witcoff
28 State Street, 28th Floor
Boston, MA 02109-1775
```

_____
Arthur T. Fattibene, CT 06916
Attorney for Plaintiffs

19